IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v.<br><br>EUGENIO A. GUARDIOLA RAMIREZ<br><br>Defendant | CRIMINAL NO. 06-006(HL) |

# OPINION AND ORDER

Procedural Background

On January 11, 2006, a grand jury of this district returned a 3-count indictment charging the defendant, Eugenio A. Guardiola Ramírez with: conspiracy to attempt to corruptly influence testimony before the grand jury, and to impede an official proceeding before a federal government agency, in violation of 18 U.S.C. § 371 and 18 U.S.C. § 1512(b)(1) and 1512(c)(2) (Count One); attempt to corruptly influence testimony before the grand jury, from on or about April 2004 until at least May 2004, in violation of 18 U.S.C. § 1512(b)(1)[1] (Count Two); and, attempt to impede an official proceeding before the

---

[1] **§ 1512. Tampering with a witness, victim, or an informant**

[....]

(b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to –

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

Criminal No. 06-006(HL) Page -2-

General Services Administration/Office of the Inspector General ("GSA/OIG"), a federal government agency, on or about March 2004, in violation of 18 U.S.C. § 1512(c)(2)[2] (Count Three).

Pending before the Court are defendant's motion to dismiss all multiplicitous counts of the indictment on Double Jeopardy grounds,[3] and the United States' timely opposition thereto. For the reasons expounded below, defendant's motion to dismiss is DENIED.

## Legal Standard

The Double Jeopardy clause mandates that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Clause embodies a triumvirate of safeguards:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

---

[....]

shall be fined under this title or imprisoned not more than ten years, or both.

[2] **§ 1512. Tampering with a witness, victim, or an informant**

[....]

(c) Whoever corruptly –

[....]

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

[3] The defendant also request that the Court conduct an in camera inspection of the grand jury transcripts.

Criminal No. 06-006(HL)                                                                                         Page -3-

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and in fact, only one crime has been committed." United States v. Chacko, 169 F.3d 140, 141 (2nd Cir. 1999).

"[I]t is the role of Congress to define crimes and to determine the appropriate punishment for these offenses. If Congress defines the crimes charged as separate and distinct offenses, an accused may be charged with these offenses separately." United States v. Serino 835 F.2d 924, 929 (1st Cir. 1987).

"[T]he test of multiplicity is not whether the same conduct is charged in both sets of counts. Frequently, the same conduct violates several distinct statutes. Where that is alleged to be the case, the test for multiplicity is ordinarily that long ago laid down by the Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 176 L.Ed. 306 (1932)." United States v. Butler, 351 F.Supp.2d 121, 126 (S.D.N.Y. 2004). "Where the same act of transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Serino, supra.

On the other hand, "a substantive crime, and a conspiracy to commit that crime, are not the 'same offense' for double jeopardy purposes." United States v. Felix, 503 U.S. 378, 112 S.Ct. 1377, 1384, 118 L.Ed.2d 25 (1992).

The Indictment is not Facially Multiplicitous

In order to obtain a conviction for a violation of 18 U.S.C. § 1512(b)(1), as charged in Count Two of the Indictment, the government must prove the following elements:

- ■ knowingly
- ■ corruptly persuaded another person, or attempted to do so
- ■ with intent to influence testimony

- in an official proceeding

See, United States v. Cruzado-Laureano, 404 F.3d 183, 200 (1st Cir. 2005).

The "official proceeding" alleged in Count Two of the Indictment is a proceeding before a grand jury of this district, and refers to Overt Acts 15(c) through 15(e), as charged in Count One of the Indictment (the conspiracy count).  Specifically, from on or about April 2004 until at least May 2004, in response to grand jury subpoenas duces tecum and ad testificandum served on April 22, 2004, the defendant met several times with a person involved in an illegal kickback payment scheme in order to advise this person as to the nature of the grand jury investigation, to attempt to influence this person to provide false information to the grand jury, and to concoct a false story to cover-up the true nature of the kickbacks.

In order to obtain a conviction for a violation of 18 U.S.C. § 1512(c)(2), as charged in Count Three of the Indictment, the government must prove the following elements:

- knowingly
- corruptly obstructed, influenced and impeded, or attempted to do so
- an official proceeding

The "official proceeding" alleged in Count Three of the Indictment is an investigation conducted by the GSA/OIG, and refers to Overt Act 15(a), as charged in Count One of the Indicment (the conspiracy count). Specifically, on or about March 4, 2004, in response to an agency subpoena duces tecum served on January 28, 2004,  the defendant, an attorney-at-law, drafted a phony services contract to hide the true nature of illegal kickback payments.

According to the defendant, the statutes whose violation is charged in the substantive counts (Counts Two and Three) of the indictment, 18 U.S.C. §§ 1512(b)(1)

Criminal No. 06-006(HL)                                                                                      Page -5-

and (c)(2), share the same elements of proof. It follows, he argues, that the charges in Counts Two and Three are multiplicitous among each other and, further, that they are the product of a single course of conduct as charged in the conspiracy count (Count One).

The defendant would have the Court find that, although he undertook to corruptly influence <u>different persons</u> (Colón, and Matos and his son-in-law) and <u>different proceedings</u> (GSA/OIG investigation and grand jury proceedings) on <u>separate, distinct occasions</u>, he committed only one crime which the government then impermissibly broke down into separate charges, in violation of the Double Jeopardy Clause. It then follows that the indictment is not facially multiplicitous.

The defendant was legal counsel of Gate Engineering Corporation and Albith Colón, its owner/president ("Gate" and "Colón," jointly referred to as the "clients"). According to the indictment, the latter had engaged in a scheme whereby Gate was fraudulently awarded bids to perform electrical contracting services for Tricon Restaurants ("Tricon"). In exchange for the fraudulent contract awards, Gate made illegal kickback payments to Tricon's Technical Services Supervisor, Jorge Luis Matos ("Matos").

A grand jury of this district and the GSA/OIG eventually conducted investigations into federal antitrust and other criminal violations by Gate. As part of these investigations, various subpoenas requiring both documents and testimony were issued and served upon Gate, Tricon, and various Gate employees.

The defendant then conspired with his clients to obstruct the aforementioned investigations and to corruptly influence the testimony of subpoenaed persons to provide false information in connection with both the GSA/OIG's and grand jury's respective investigations so as to conceal the true nature of the fraudulent kickback scheme. Each

Criminal No. 06-006(HL)                                                                                      Page -6-

instance of obstruction and witness tampering is listed as an Overt Act of the Indictment's conspiracy count (Count One), and in turn incorporated by reference in the Indictment's substantive counts (Counts Two and Three),[4] to wit:

- On March 4, 2004, the defendant drafted and provided his client with a phony services contract to hide the true nature of the kickback payment to deceive investigators into believing that the payments were in fact bona fide compensation for cleaning and maintenance services provided by Matos' son-in-law.  The defendant drafted the phony contract prompted by service of a GSA/OIG subpoena <u>duces tecum</u> upon Gate on January 28, 2004.

- On March 30, 2004, the defendant advised his client to make a kickback payment in cash instead of by check to obstruct investigators' detection of same.

- On April 22, 2004, Gate was served with grand jury subpoenas <u>duces tecum</u> and <u>ad testificandum</u>.  In response thereto, on April 28, 2004, the defendant met with Colón and Matos to advise them as to the object and nature of the investigation.

- On May 18, 2004, defendant and Colón met with Matos to convince him to tell investigators and the grand jury that the kickbak payments were payments to his son-in-law for services rendered to Gate.

- On May 19, 2004, defendant and Colón telephoned both Matos and his son-in-law telling them to inform investigators and the grand jury that the kickback payments were gifts to the latter's family.

As summarized herein, the indictment alleges separate and specific instances of conduct by the defendant and others in furtherance of their efforts to conceal their fraudulent and unlawful activities and to impede and obstruct the GSA/OIG's and grand jury's respective investigations.  These specific instances of conduct took place on different dates (March 4, April 28, May 18, and May 19, 2004) responded to different events (subpoenas), and utilized different means (personal meetings, telephone

---

[4] Overt Acts 15(c) through 15(e) are incorporated by reference in Count Two (witness tampering in official proceedings before the grand jury).  Overt Act 15(a) is incorporated by reference in Count Three (corruptly obstructing, influencing or impeding official proceedings before the GSA/OIG).

Criminal No. 06-006(HL) Page -7-

conversations, drafting of phony contract).

When defendant drafted the phony services contract to respond to the GSA/OIG's subpoena, his conduct comes within the proscription against the corrupt influence, obstruction and impediment of any official proceeding, as embodied in 18 U.S.C. § 1512(c)(2).

On the other hand, when the defendant met with Colón or telephoned Matos and his son-in-law to attempt to persuade them to provide false information to the grand jury, his conduct comes within the purview proscribing witness tampering, as embodied in 18 U.S.C. § 1512(b)(1).

WHEREFORE, defendant's Motion to Dismiss Indictment Pursuant on Double Jeopardy grounds (Docket No. 21) is DENIED. Because the Court finds the indictment is not facially multiplicitous, defendant's request that the Court conduct an in camera inspection of the grand jury transcripts is also DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 8th day of March, 2006.

s/ Héctor M. Laffitte
HECTOR M. LAFFITTE
U.S. DISTRICT JUDGE